1

1        IN THE UNITED STATES DISTRICT COURT

2

3            CENTRAL DISTRICT OF CALIFORNIA

4                      - - -

5        THE HONORABLE A. HOWARD MATZ, JUDGE PRESIDING

6                      - - -

7

8

9

```
-----------------------------
UNITED STATES OF AMERICA,    )
              PLAINTIFF,     )
         -v-                 )   CASE NO. CR 99-123-AHM
BRUCE BELL,                  )
              DEFENDANT.     )
-----------------------------
```

10

11

12

13                    COPY

14

15

16        REPORTER'S TRANSCRIPT OF PROCEEDINGS
             LOS ANGELES, CALIFORNIA
17             FRIDAY, MAY 14, 1999

18

19

20

21

22

23                LYNNE SMITH
             OFFICIAL COURT REPORTER
24          UNITED STATES DISTRICT COURT
            312 NORTH SPRING STREET, #430
25          LOS ANGELES, CALIFORNIA  90012

1

APPEARANCES:

2

ON BEHALF OF PLAINTIFF:
3       ALEJANDRO MAYORKAS
        UNITED STATES ATTORNEY
4       BY:   ANDREW BROWN
        ASSISTANT UNITED STATES ATTORNEY
5       312 NORTH SPRING STREET
        LOS ANGELES, CALIFORNIA      90012
6

7

8
        ON BEHALF OF DEFENDANT:
9       BRIAN NEWMAN
        400 CORPORATE POINTE, #805
10      CULVER CITY, CALIFORNIA   90230

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

3

```
1                    FRIDAY, MAY 14, 1999; LOS ANGELES, CALIFORNIA

2                                    -000-

3              THE CLERK:   Item 1, CR 99-123-AHM, U.S.A. versus Bruce

4    Bell and Montez Day.

5              Appearances, counsel.

6              MR. BROWN:   Good afternoon, Your Honor.  Andrew Brown

7    for the government.

8              MR. NEWMAN:   Good afternoon, Your Honor.  Brian Newman

9    for Bruce Bell.  And I do apologize for being late.

10             THE COURT:   You had an important event, one of your

11   kids had a social event at school?

12             MR. NEWMAN:   Yes, Your Honor.

13             THE COURT:   That's very important.

14             MR. NEWMAN:   It is.  It's something that we do as a

15   support group for the school a couple times a year and it's

16   something that I'm active in.

17             THE COURT:   How old is this child?

18             MR. NEWMAN:   Eight.

19             THE COURT:   That's priority.  Unless there are

20   compelling circumstances, I understand why.  No problem.

21             MR. MAYOCK:   Good afternoon, Your Honor.  Michael

22   Mayock with Mr. Montez Day.

23             THE COURT:   Nice to see you Mr. Mayock.  We were

24   colleagues in the U.S. attorney's office.  You should know that.

25   We're here for a change of plea to a single indictment in which
```

1    Mr. Bell and Mr. Day are both named as defendants; is that

2    correct?

3              MR. NEWMAN:  Correct.

4              MR. MAYOCK:  Correct, Your Honor.

5              THE COURT:  Is there a plea agreement for one but not

6    for the other?

7              MR. BROWN:  Yes, Your Honor.

8              THE COURT:  Is there any reason there can't be

9    reference to that agreement?

10             MR. BROWN:  No, Your Honor.

11             THE COURT:  The plea agreement for Mr. Bell refers to

12   Counts 2 and 3.  To which count or counts is Mr. Day intending

13   to change his plea?

14             MR. BROWN:  One, two and three.

15             THE COURT:  All three.  Is that correct, all three?

16             MR. BROWN:  Yes, Your Honor.

17             THE COURT:  Okay.  Let me address my remarks to Mr. Day

18   and Mr. Bell for a second.  This procedure of changing a plea

19   and entering a guilty plea is elaborate.  Certain things have to

20   be dealt with.  A certain format has to be followed.  I'm going

21   to explain it.

22             I need your cooperation and I need your careful

23   attention.  I will be asking each of you a number of questions.

24   But at some point in the proceedings I will be telling both of

25   you the identical thing such as what rights you have that you

5

1    will be giving up.

2          To save time I will say certain things once that apply

3    to both and then I will ask each of you separately whether you

4    enter that plea.  If either of you, once you talk to your

5    respective lawyers or raise a question with me or otherwise

6    pause in what we're doing, just let me know and you will have a

7    right to do that.  But otherwise work with me.  Please be very

8    attentive because I want to make sure you know what you're doing

9    and the consequences to you of what you are planning to do.

10          Is that understood by both of you?  Mr. Bell?

11          DEFENDANT BELL:  Right.

12          THE COURT:  Mr. Day?

13          DEFENDANT DAY:  Yes, Your Honor.

14          THE COURT:  The first thing to remember is that you can

15    change your mind before we get to the finish line.  And by the

16    finish line, I don't mean to minimize the importance of what

17    we're doing with these changes of plea being accepted and

18    entered.  Once that happens there is no going back on that.  You

19    will be found guilty and what will remain will be sentencing

20    basically.  So until we get there, you have a right to change

21    your mind.  But it may be something that you have already

22    committed to do and that's fine also.

23          At the outset I'm going to ask the clerk to swear each

24    of you in.  She'll ask you preliminary questions and then I will

25    turn to the questions and the advice of rights that I will be

1    giving to each of you.

2         THE CLERK:  Mr. Bell, is Bruce Bell your true and full

3    name?

4         DEFENDANT BELL:  Yes, it is.

5         THE CLERK:  It has been indicated that you wish to

6    withdraw your previously entered pleas of not guilty to Counts 2

7    and 3 of the indictment and tender a different plea.  Do you now

8    withdraw your previously entered plea of not guilty to Counts 2

9    and 3 of the indictment?

10        DEFENDANT BELL:  Yes.

11        THE CLERK:  How do you now plead to the indictment

12   filed against you, guilty or not guilty?

13        DEFENDANT BELL:  Guilty.

14        THE CLERK:  How do you now plead to Count 3 of the

15   indictment, guilty or not guilty?

16        DEFENDANT BELL:  Guilty.

17        THE CLERK:  Mr. Day, is Montez Day your true and full

18   name?

19        THE DEFENDANT:  Yes.

20        THE CLERK:  It has been indicated that you wish to

21   withdraw your previously entered pleas of not guilty to Counts

22   1, 2 and 3 of the indictment and enter a different plea.  Do you

23   now withdraw your previously entered plea of not guilty to

24   Counts 1, 2 and 3 of the indictment?

25        DEFENDANT DAY:  Yes.

23

```
1         THE CLERK:  How do you now plead to Count 1 of the
2    indictment filed against you, guilty or not guilty?
3         DEFENDANT DAY:  Guilty.
4         THE CLERK:  How do you now plead to Count 2, guilty or
5    not guilty?
6         DEFENDANT DAY:  Guilty.
7         THE CLERK:  How do you now plead to Count 3, guilty or
8    not guilty?
9         DEFENDANT DAY:  Guilty.
10        THE CLERK:  The court will ask you the nature of your
11   pleas under oath.  Would each of you please raise your right
12   hand to be sworn.
13        (DEFENDANTS SWORN)
14        THE COURT:  Okay.  Let me start with you, Mr. Bell.
15   Tell me how you're feeling right now.
16        DEFENDANT BELL:  How do I feel?  I feel all right.
17        THE COURT:  Are you dealing with any physical or
18   emotional illnesses or conditions that might affect your ability
19   to make a decision, a sensibly formed decision?
20        DEFENDANT DAY:  No.
21        THE COURT:  Are you under any treatment for any
22   condition today?
23        DEFENDANT BELL:  No, I'm not.
24        THE COURT:  Any illness?
25        DEFENDANT BELL:  No.
```

24

```
1          THE COURT:  Have you taken any medicines or drugs
2    today?
3          DEFENDANT BELL:  No.
4          THE COURT:  Alcoholic beverages?
5          DEFENDANT BELL:  No.
6          THE COURT:  Are you currently under any doctor's care?
7          DEFENDANT BELL:  No.
8          THE COURT:  Tell me please what your age is.
9          DEFENDANT BELL:  46.
10         THE COURT:  And your level of education?
11         DEFENDANT BELL:  High school.
12         THE COURT:  High school?
13         DEFENDANT BELL:  Yes.
14         THE COURT:  Did you finish?
15         THE DEFENDANT:  I got a G.E.D.
16         THE COURT:  Have you been under psychiatric care of any
17   kind?
18         DEFENDANT BELL:  No, I haven't.
19         THE COURT:  Are you a citizen of the United States?
20         DEFENDANT BELL:  Yes.
21         THE COURT:  Okay.  Now I'm going to ask the same
22   questions to you, Mr. Day.  Then I will turn to some things that
23   apply to both of you.
24         How are you feeling today?
25         DEFENDANT DAY:  I'm feeling okay.
```

9

1          THE COURT:  Have you taken any medicines or drugs

2     today?

3          DEFENDANT BELL:  No.

4          THE COURT:  Any alcoholic beverages or any other kind

5     of drug?

6          DEFENDANT DAY:  No, sir.

7          THE COURT:  Are you under any doctor's care today?

8          DEFENDANT DAY:  No, sir.

9          THE COURT:  Please tell me your age.

10          DEFENDANT DAY:  28.

11          THE COURT:  And your level of education?

12          DEFENDANT DAY:  G.E.D., pre-college.

13          THE COURT:  Have you been under any psychiatric or

14     psychological care?

15          DEFENDANT DAY:  Yes.

16          THE COURT:  Are you currently receiving psychological

17     or psychiatric care?

18          DEFENDANT DAY:  No.

19          THE COURT:  Do you feel you're in condition and a

20     position today to understand what is going on?

21          DEFENDANT DAY:  Yes.

22          THE COURT:  Are you also a citizen of the United

23     States?

24          DEFENDANT DAY:  Yes.

25          THE COURT:  Okay.  Mr. Bell, did you receive a copy of

1    the indictment?

2              DEFENDANT BELL: Yes, I have.

3              THE COURT: Did you also, Mr. Day?

4              DEFENDANT DAY: Yes, sir.

5              THE COURT: Mr. Bell, did you read it?

6              DEFENDANT BELL: Yes.

7              THE COURT: Did you read it, Mr. Day?

8              DEFENDANT DAY: I did, yes.

9              THE COURT: Okay. Do you each believe that you

10   understand the charges that are in that indictment? First you,

11   Mr. Bell.

12             DEFENDANT BELL: Yes.

13             THE COURT: Mr. Day?

14             DEFENDANT DAY: Yes.

15             THE COURT: Let me tell you now collectively, jointly,

16   each of you, certain things which I think you already know and

17   in the case of Mr. Bell which are actually placed in writing in

18   the plea agreement. These are rights that you will be giving

19   up. They were mentioned I think in the arraignment when you

20   were first arraigned on these charges. But it's important that

21   you understand these are your rights.

22             By pleading guilty, with the exception of the right to

23   counsel, you will be giving up these rights. Each time I

24   mention a right, I will ask you in turn whether you wish to give

25   it up. So let me begin.

27

1    You each have a constitutional right to a speedy and

2    public trial by jury.  Do you wish to give up that right,

3    Mr. Bell?

4              DEFENDANT BELL:  Yes.

5              THE COURT:  Do you, Mr. Day?

6              DEFENDANT DAY:  Yes.

7              THE COURT:  You each have a right to be presumed

8    innocent and to have the burden shifted to the government to

9    prove you guilty beyond a reasonable doubt.  Neither of you has

10   to prove yourself innocent.  The burden is always upon the

11   government.

12             Do you wish to give up that right, Mr. Bell?

13             DEFENDANT BELL:  Yes.

14             THE COURT:  Mr. Day?

15             DEFENDANT DAY:  Yes.

16             THE COURT:  Each of you, if you went to trial, would

17   have the right to see and examine the evidence and to

18   cross-examine the witnesses.  Do you wish to give up that right,

19   Mr. Bell?

20             DEFENDANT BELL:  Yes.

21             THE COURT:  Do you, Mr. Day?

22             DEFENDANT DAY:  Yes.

23             THE COURT:  At all times you would have the right

24   against self incrimination.  And as I think you undoubtedly

25   know, that means the right to refuse to testify.  No one can

1   compel you to give information that may hurt you.  You could

2   always remain silent.  Do you wish to give up that right?

3            DEFENDANT BELL:  Yes.

4            THE COURT:  Do you, Mr. Day?

5            DEFENDANT DAY:  Yes.

6            THE COURT:  The other side of the coin is true also.

7   If you do take the case to trial, each of you could choose to

8   testify, go up to the witness stand and give your versions of

9   the facts and ask the jury to accept your view.  Do you wish to

10  give up that right, Mr. Bell?

11           DEFENDANT BELL:  Yes.

12           THE COURT:  Do you, Mr. Day?

13           DEFENDANT DAY:  Yes, sir.

14           THE COURT:  You could also, if the case went to trial,

15  use the subpoena power of the court to compel other witnesses to

16  come to court and if they were in a position to do so, to

17  testify on your behalf.  Did you wish to give up that right,

18  Mr. Bell?

19           DEFENDANT BELL:  Yes.

20           THE COURT:  Do you, Mr. Day?

21           DEFENDANT DAY:  Yes.

22           THE COURT:  If you took the case to trial and were

23  found guilty, you could appeal the verdict of guilt.  But if you

24  plead guilty, you won't be able to do that.  Do you understand

25  that?

13

1    DEFENDANT BELL: Yes.

2    THE COURT: Are you willing to give up that right?

3    DEFENDANT BELL: Yes.

4    THE COURT: And you, Mr. Day?

5    DEFENDANT DAY: Yes.

6    THE COURT: Each of you will continue to have the right

7    to counsel and if you can't afford counsel to have counsel

8    appointed at the public's expense to continue to represent you.

9    Mr. Newman, is it your intention to continue to

10   represent Mr. Bell?

11   MR. NEWMAN: It is, Your Honor.

12   THE COURT: Mr. Mayock?

13   MR. MAYOCK: Yes, Your Honor.

14   THE COURT: Okay. Those are rights that neither of you

15   will lose. Until the completion of this case and through the

16   point of sentencing, each of you will continue to enjoy that

17   right to effective counsel.

18   Now both of you being citizens, and I don't know

19   anything about your background so some of this may apply, maybe

20   not, but I want you to understand by pleading guilty to those

21   charges you are more likely than not going to lose certain civil

22   rights that citizens otherwise enjoy: The right to vote, the

23   right to run for public office, the right to serve on a jury,

24   the right to purchase and possess firearms. You will be giving

25   up all those rights.

14

1        Do you wish to do that, Mr. Bell?

2        DEFENDANT BELL:  Yes.

3        THE COURT:  Do you, Mr. Day?

4        DEFENDANT DAY:  Yes.

5        THE COURT:  Does either of you have any questions about

6   the rights that I just spelled out for you?

7        DEFENDANT BELL:  No, sir.

8        DEFENDANT DAY:  No, sir.

9        THE COURT:  Do you understand, Mr. Bell, that each of

10  the two counts to which you're pleading guilty is a felony,

11  separate felony?

12        DEFENDANT BELL:  Yes.

13        THE COURT:  All the three counts you're pleading guilty

14  to, Mr. Day, those are felonies too.  Do you understand that?

15        DEFENDANT DAY:  Yes.

16        THE COURT:  Okay.  Now I'm going to ask that Mr. Brown

17  set forth first the elements of these offenses.  I'm going to

18  summarize the offenses as paraphrased in the indictment.  I'm

19  going to ask Mr. Brown to summarize what the elements are, what

20  the government would have to prove.

21        I will ask him to do it for all three counts.  And then

22  I will address each of you.  Then I will go back to you, Mr.

23  Brown, and ask you to summarize what the evidence would be,

24  first against Mr. Bell and then against Mr. Day.

25        Now the indictment in case Number 99-123 is only a

15

1    single indictment. It wasn't superseding, was it?

2         MR. BROWN: That's correct, Your Honor.

3         THE COURT: Okay. In Count 1 the indictment alleges

4    violation of 18 USC Section 371, conspiracy to commit a bank

5    robbery. This is particularly applicable to you, Mr. Day,

6    because you're pleading guilty to that count.

7         It says beginning on or before January 22 of this year,

8    1999, and continuing to on or about January 26 of '99, both you

9    and Mr. Bell and others known and unknown to the grand jury

10   conspired and agreed with each other to commit a bank robbery of

11   Home Savings in San Fernando, California.

12        On Page 2 it describes the means by which this

13   agreement, this conspiracy was to be accomplished and it sets

14   forth eight ways in which the object of the conspiracy was to be

15   accomplished. It claims that both defendants would obtain a

16   stolen van to use as a preliminary getaway vehicle; that both

17   defendants would park illegally a Ford Expedition a distance

18   from Home Savings for use as a secondary getaway vehicle.

19        That both defendants would drive to Home Savings in the

20   stolen van. They would enter Home Savings brandishing guns,

21   handguns, would order the employees and customers inside to get

22   down on the floor. Both defendants would order the manager of

23   Home Savings to open the bank vault and then they would flee

24   from Home Savings in a stolen van. After that it's alleged that

25   both defendants would switch from the stolen van to the Ford

16

1    Expedition and drive the Ford Expedition to a safe place and

2    divide the money.

3          The first counts also alleges that they commit various

4    fraudulent and overt acts to carry out this plan.  And they

5    include driving a stolen getaway van to Home Savings.  That's

6    something that's alleged as to both defendants.  Both defendants

7    entering the bank wearing masks and hand gloves and brandishing

8    a revolver, semi-automatic handgun.  Both defendants forced the

9    employees to open the vault and give them over $85,000.

10         And I'm going to focus on the ones you're specifically

11   mentioned in Mr. Bell -- excuse me, Mr. Day.  Both defendants

12   fled Home Savings in the stolen getaway van.  One of the

13   defendants --  actually I should mention this -- told by the

14   assistant manager that she was sorry she put a dye pack in with

15   the stolen money and prevented her from exiting the bank by

16   grabbing her hair and pulling her back.

17         Attention now to you, Mr. Day, drove the Ford

18   Expedition to avoid the police and you stopped the Ford

19   Expedition at a mall so defendants could hide themselves from

20   the view of a helicopter, police helicopter, and from pursuing

21   police officers.  All of that is spelled out in the first count.

22         The second count says that 18 USC Section 2113,

23   Subsections A and D was violated in that both defendants by

24   force, violence, intimidation knowingly took from a person

25   approximately $85,600 belonging to Home Savings, San Fernando

33

1   branch, Home Savings then insured by the FDIC, Federal Deposit

2   Insurance Corporation; that both defendants assaulted and put in

3   jeopardy the life of the victim assistant manager and others by

4   using a handgun.

5           Finally the third count says that both defendants

6   violated 18 USC Section 924(c) by knowingly using and carrying a

7   firearm, namely a loaded .38 caliber revolver during the

8   commission of A crime of violence of robbing Home Savings.

9           Now Mr. Brown, would you as to Count 1, just stop after

10  you do it for Count 1, describe what the elements of the offense

11  of conspiracy in violation 18 USC 371 would be.

12          MR. BROWN:  In order for defendant Day to be proved

13  guilty of conspiracy, he must have, on or about the dates

14  charged in the indictment, agreed with another person to commit

15  the bank robbery.  Second, he must have become a member of the

16  conspiracy knowing of its object and intending to help

17  accomplish it.

18          And third, at least one of the members of the

19  conspiracy must have performed at least one overt act for the

20  purpose of carrying out the conspiracy.

21          THE COURT:  Now again, in order to make this clear and

22  simple, I would appreciate it if you would turn to, Mr. Brown,

23  only focusing on Count 1 and only as to Mr. Day and summarize

24  what the evidence would be that the government would introduce

25  before the jury.

```
 1              MR. BROWN:   The government would prove that on or about

 2   January 22nd, 1999, the day on which the getaway van was stolen,

 3   and continuing through January 26th, 1999, the date on which the

 4   bank robbery was committed in Los Angeles County, defendant

 5   Montez Day agreed with defendant Bruce Bell to commit an armed

 6   takeover robbery of Home Savings of America in San Fernando,

 7   California, the deposits of which were then insured by the

 8   Federal Deposit Insurance Corporation.

 9              THE COURT:   Mr. Day, I have asked the prosecutor to

10   focus only on Count 1 because that's a count that you are

11   planning to change your plea to.  Did you hear what he said?

12              DEFENDANT DAY:   Yes.

13              THE COURT:   Did you understand it?

14              DEFENDANT DAY:   Yes, sir.

15              THE COURT:   So what he did was describe technically

16   what has to be proven to convict someone of conspiracy.  He

17   summarized what the government would introduce --

18              MR. BROWN:   Your Honor, I omitted one element.  The

19   government would show that the overt act occurred and that is

20   established by the defendants entering the bank.

21              THE COURT:   Do you have -- would you be putting on

22   witnesses, eyewitnesses?

23              MR. BROWN:   Yes, Your Honor.  And surveillance photos.

24              THE COURT:   Did the eyewitnesses identify these

25   defendants through lineups or through pictures?
```

1    MR. BROWN:  No, they were wearing masks.  The

2    identifications would have been made based on clothing and

3    witnesses seeing the defendants fleeing and the police following

4    them until their vehicle was stopped.  The stolen van was found

5    and one of the weapons was later found.

6         THE COURT:  Is it correct that each of the defendants

7    was caught and arrested shortly after they fled the bank?

8         MR. BROWN:  Yes, Your Honor.

9         THE COURT:  In possession of the money?

10        MR. BROWN:  Yes, Your Honor.

11        THE COURT:  Let's focus back on you, Mr. Day.  Do you

12   agree with what the prosecutor said as far as the summary of the

13   proof that he would introduce?  Let me explain what the question

14   is.  It may be the question wasn't very clear.

15        In order for this proceeding to be conducted properly,

16   the record has to show that there's a factual basis.  It's not

17   enough for someone to come in and say I plead guilty, I want to

18   get the benefit of whatever deal or whatever impact pleading

19   guilty may be to the person that's done what he's accused of.

20        I asked Mr. Brown to summarize what the evidence would

21   be hoping that you would listen to it and be able to tell me

22   whether in fact you would agree that those are things that

23   happened.  If you do agree, if you did the things that he's

24   talking about, then the record will show a factual basis and I

25   will be entitled to accept your guilty plea.  Does that help you

1   understand what I'm driving at?

2           DEFENDANT DAY:  Yes.

3           THE COURT:  Do you agree with what Mr. Brown said?

4           DEFENDANT DAY:  Yes.

5           THE COURT:  Did you in fact do those things?

6           DEFENDANT DAY:  Yes, Your Honor.

7           THE COURT:  Okay.  Now Mr. Brown, do the same thing,

8   but this is going to apply to both Mr. Bell and Mr. Day.

9   They're both planning to plead to each of Counts 2 and 3.  So

10  set forth what the elements of Count 2 are and what the evidence

11  would be.

12          MR. BROWN:  In order to be guilty of armed bank

13  robbery, the defendant must have taken from a teller money

14  belonging to a bank.  The defendant must have used force and

15  violence or intimidation in doing so.  The deposits of the bank

16  must have been insured by the Federal Deposit Insurance

17  Corporation at that time.  And finally, the defendant must have

18  intentionally made a show of force that caused the teller to

19  fear bodily harm by using a dangerous weapon.

20          If this case went to trial, the government would prove

21  that defendants Bruce Bell and Montez Day entered the Home

22  Savings of America in San Fernando, California on January 26th,

23  1999 and that defendant Montez Day brandished a semi-automatic

24  pistol while defendant Bruce Bell brandished a loaded .38

25  caliber revolver.  Defendants Montez Day and Bruce Bell forced

21

1   the assistant manager Elizabeth Aguillon to open the bank vault

2   and took from the bank vault approximately $85,600 in cash.

3       THE COURT:  Mr. Bell, do you understand what Mr. Brown

4   said?

5       DEFENDANT BELL:  Yes.

6       THE COURT:  Did you in fact do the things he just

7   described?

8       DEFENDANT BELL:  Yes.

9       THE COURT:  How about you, Mr. Day, do you understand

10  what he said?

11      DEFENDANT DAY:  Yes.

12      THE COURT:  Did you do those things?

13      DEFENDANT DAY:  Yes.

14      THE COURT:  Let me hear Count 3, Mr. Brown.  Summarize

15  what the elements are and what the evidence would be, please.

16      MR. BROWN:  In order to be guilty of using or carrying

17  a firearm during a crime of violence, the following must be

18  true.  One, defendant committed the crime of violence charged in

19  the indictment, bank robbery in this case; two, the defendant

20  knowingly used or carried a firearm; three, defendant used or

21  carried the firearm during and in relation to the crime of

22  violence.

23      Because the 924(c) charge in this case carries a

24  mandatory minimum sentence of seven years, the government would

25  also have to prove the defendant brandished the firearm.

1    Now Your Honor, because the firearm charged was only

2    possessed by defendant Bell and the government is relying on

3    Pinkerton liability as to defendant Day for that firearm, I'd

4    also like to put on the record the elements of Pinkerton

5    liability.

6    THE COURT:  I want Mr. Day to pay attention to this.

7    Is it an accurate way of paraphrasing what you're about to do,

8    Mr. Brown, that you're saying the indictment singles out only

9    the weapon that Mr. Bell actually carried, but that you have a

10   basis to obtain a conviction of guilt as to Mr. Day?

11   MR. BROWN:  That's correct, Your Honor.

12   THE COURT:  It's a legal basis called Pinkerton?

13   MR. BROWN:  Yes.  In order, if you have a criminal

14   agreement with somebody to commit an act, there are certain

15   instances in which you will be liable for the crime, the acts

16   committed by the person you're conspiring with.  That is called

17   Pinkerton liability.  And if the acts of your partner in crime

18   are reasonably foreseeable and a necessary and natural

19   consequence of your criminal agreement, you will be liable for

20   those acts as well.  Shall I specify the elements, Your Honor?

21   THE COURT:  Yes.

22   MR. BROWN:  In order for the defendant to be guilty of

23   a crime committed by his co-conspirator, the following must be

24   true.  One, defendant's co-conspirator committed a crime such as

25   a bank robbery; two, that the co-conspirator was a member of the

1    conspiracy charged in Count 1 of the indictment; three, that the

2    co-conspirator committed the crime in furtherance of the

3    conspiracy; four, defendant was a member of the conspiracy on

4    the date that the co-conspirator committed the crime; and five,

5    the crime fell within the scope of the conspiracy and could

6    reasonably have been foreseen to be a necessary and natural

7    consequence of the conspiracy.

8              Shall I proceed with the factual basis, Your Honor?

9              THE COURT: Yes.

10             MR. BROWN: On January 26, 1999, defendants Bruce Bell

11   and Montez Day entered the Home Savings of America in San

12   Fernando which was then insured by the Federal Deposit Insurance

13   Corporation. Bruce Bell brandished a loaded .38 caliber

14   revolver. Bruce Bell's brandishing of a .38 caliber revolver

15   was within the scope of Montez Day and Bruce Bell's unlawful

16   agreement and could reasonably have been foreseen by defendant

17   Montez Day as a necessary and natural consequence of that

18   agreement. And the defendants used that weapon in order to rob

19   the bank on that day.

20             THE COURT: Okay. I want to turn to you first,

21   Mr. Day. There were a lot words Mr. Brown used. Were you able

22   to understand what he was saying as to why you could be found

23   guilty of what Mr. Bell did as to his .38 caliber revolver?

24             DEFENDANT DAY: Yes.

25             THE COURT: Okay. Mr. Bell, did you do the things that

40

1   Mr. Brown referred to in connection with Count 3 relating to the

2   use of a firearm?

3           DEFENDANT BELL:  Yes.

4           THE COURT:  Did you, Mr. Day?

5           DEFENDANT DAY:  Yes.

6           THE COURT:  All right.  And I want to address some

7   questions next to you, Mr. Bell, because I have been informed

8   and have been given a copy of the plea agreement.  And do you

9   have this with you, Mr. Newman?

10          MR. NEWMAN:  I do, Your Honor.

11          THE COURT:  Okay.  Would you turn to Page 8, please.

12          Mr. Bell, on Page 8 is that your signature?

13          DEFENDANT BELL:  Yes, it is.

14          THE COURT:  Did you sign that agreement in the presence

15  of Mr. Newman?

16          DEFENDANT BELL:  Yes.

17          THE COURT:  Before you signed it, did you read it?

18          DEFENDANT BELL:  Yes.

19          THE COURT:  Did you understand it?

20          DEFENDANT BELL:  Yes.

21          THE COURT:  As far as you're concerned, does this plea

22  agreement contain the entire terms of the agreement between you

23  on the one hand and the U.S. attorney's office on the other?

24          DEFENDANT BELL:  Yes.

25          THE COURT:  Has anyone made you any promises or

1   representations of guarantees other than whatever may be set

2   forth in this plea agreement?

3            DEFENDANT BELL:  No.

4            THE COURT:  Has anyone made any threats to you that

5   prompted you to plead guilty this afternoon?

6            DEFENDANT BELL:  No.

7            THE COURT:  Did anyone tell you about or promise to you

8   what specific sentence would be imposed?

9            DEFENDANT BELL:  No.

10           THE COURT:  Do you have any other agreement with the

11  government besides what is now in your hands as a written plea

12  agreement?

13           DEFENDANT BELL:  No.

14           THE COURT:  Did anyone promise you any leniency or

15  probation or any kind of outcome once the day of sentencing

16  comes?

17           DEFENDANT BELL:  No.

18           THE COURT:  Are you presently on parole?

19           DEFENDANT BELL:  Yes.

20           THE COURT:  Have you discussed with your lawyer the

21  impact on your parole of being found guilty today, the impact on

22  the offense for which you're on parole?

23           DEFENDANT BELL:  Yes.

24           THE COURT:  Are you involved in any court proceedings?

25           DEFENDANT BELL:  No.

1          THE COURT:  Have you been advised of the maximum

2     penalty under the law?

3          DEFENDANT BELL:  Yes, I have.

4          THE COURT:  For these offenses, at least for Count 3,

5     there's also a minimum penalty; is that correct?

6          MR. BROWN:  Yes, Your Honor.

7          THE COURT:  Both of you should listen because I'm now

8     going to ask Mr. Brown to place on the record both the maximum

9     and minimum penalties.

10         MR. BROWN:  The maximum penalty for the conspiracy

11    count, Count 1, is five years imprisonment, a three-year period

12    of supervised release, a fine of $250,000 and a mandatory

13    special assessment of $100.

14         The maximum sentence the court could impose for the

15    armed bank robbery, Count 2, is 25 years imprisonment, a

16    five-year period of supervised release, a fine of $250,000 and a

17    mandatory special assessment of $100.

18         The statutory maximum sentence the court could impose

19    for violation of 924(c), the third count, is life imprisonment,

20    a five-year period of supervised release, a fine of $250,000 and

21    a mandatory special assessment of $100.

22         The statutory mandatory minimum sentence that the court

23    must impose for Count 3 and the 924(c) charge is a seven-year

24    term which must run consecutive to any other sentence of

25    imprisonment.  Therefore, the total maximum sentence for all of

1    these offenses to which defendant Montez Day is pleading guilty

2    is life imprisonment, a five-year period of supervised release,

3    a fine of $750,000 and a mandatory special assessment of $300.

4           The maximum total sentence for the two offenses to

5    which defendant Bruce Bell is pleading guilty is life

6    imprisonment, a five-year period of supervised release, a fine

7    of $500,000 and a mandatory special assessment of $200.

8           THE COURT:  Okay.  Mr. Bell, continuing with you for a

9    moment.  You've heard some reference to supervised release.

10   This is something that applies to both of you.  Do you both

11   understand that in the federal system there's no longer such a

12   thing as parole?  If someone sentenced to prison serves out the

13   term of sentence except for the reduction that may be earned for

14   good time or good behavior and then when that person is released

15   from prison he may be subjected to something called supervised

16   release which is basically supervision that has conditions,

17   restrictions, terms and limitations.  If a person violates the

18   terms of his supervised release, he can be sent back to prison

19   for the entire amount of the period of supervised release.

20          Do you understand that, Mr. Bell?

21          DEFENDANT BELL:  Yes, I do.

22          THE COURT:  Do you understand that, Mr. Day?

23          DEFENDANT DAY:  Yes, sir.

24          THE COURT:  Now there's also been some reference at

25   least in the plea agreement I think and perhaps there's

28

1    something been said today about the Sentencing Commission

2    guidelines.  I want to tell you both about those.  There will be

3    some things you and I will talk about directly with you in a

4    minute, Mr. Day.  I will be getting to you as well, Mr. Bell.

5           Now this again applies to both of you.  Under the

6    federal system that you're now part of there are sentencing

7    guidelines which are issued by something called the Sentencing

8    Commission.  They contain an analysis of the relevant facts and

9    those include the nature of the offense, the criminal history of

10   the defendant, whether the defendant accepted responsibility for

11   what he was accused of, whether in the alternative he obstructed

12   justice; a lot of factors.  They are all taken into account by

13   the probation office.

14          The probation office applies these guidelines issued by

15   the commission and comes up with a guideline range expressed in

16   months, how many months can the defendant be sentenced.  The low

17   end and the high end are included.  But I'm not bound by these

18   guideline determinations.  Under certain circumstances I impose

19   a tougher sentence, a longer sentence, or I can impose a shorter

20   sentence.  You each will get through your lawyers and directly

21   in your own right a copy of the presentence report which is

22   prepared by the probation office and which deals with these

23   guidelines.

24          Each of you through your lawyer will have a chance to

25   challenge it or add to it or change it.  It eventually comes to

29

1   me and then I will review it.  But I again want to make sure you

2   each understand that I'm not bound by it.

3           Do you understand that, Mr. Bell?

4           DEFENDANT BELL:  Yes, sir.

5           THE COURT:  Are there any questions you have at the

6   moment about what I have said about the sentencing guidelines?

7           DEFENDANT BELL:  No.

8           THE COURT:  Mr. Day, do you understand what I said

9   about the guidelines?

10          DEFENDANT DAY:  Yes, sir.

11          THE COURT:  Do you have any questions about those

12  guidelines?

13          DEFENDANT DAY:  No, sir.

14          THE COURT:  Okay.  Now Mr. Brown, in the plea agreement

15  from Mr. Bell is there any provision relating to appeal?

16          MR. BROWN:  No, Your Honor.

17          THE COURT:  Okay.  And there's no agreement restricting

18  Mr. Day; is that correct, Mr. Mayock?

19          MR. MAYOCK:  That's correct, Your Honor.

20          THE COURT:  Each of you needs to understand that when I

21  finally do impose sentence, if we get to that point, if I'm

22  wrong you can appeal what I did.  You may file your appeal

23  through your lawyer, challenge the sentence, not the finding of

24  guilty, not the guilty verdict, but the sentence.

25          Do you understand that, Mr. Bell?

1    DEFENDANT BELL: Yes, sir.

2    THE COURT: Do you, Mr. Day?

3    DEFENDANT DAY: Yes, sir.

4    THE COURT: Okay. Turning to you for a minute,

5    Mr. Bell, have you had sufficient time to discuss this case with

6    Mr. Newman?

7    DEFENDANT BELL: Yes.

8    THE COURT: Are you satisfied that he's fully

9    considered any defenses you might have to the charges?

10   DEFENDANT BELL: Yes, I am.

11   THE COURT: Are you satisfied with his representation

12   of you?

13   DEFENDANT BELL: Yes.

14   THE COURT: Has he advised you of the nature of these

15   charges and how the factors that go into the sentence generally

16   work?

17   DEFENDANT BELL: Yes.

18   THE COURT: Have you told him all the facts and

19   circumstances surrounding this case?

20   DEFENDANT BELL: Yes.

21   THE COURT: Okay. Mr. Day, same question. I'm asking

22   now a few questions about Mr. Mayock. Have you had a sufficient

23   opportunity to discuss this case with him?

24   DEFENDANT DAY: Yes.

25   THE COURT: Are you satisfied with his representation

1    of you?

2              DEFENDANT DAY:  Yes.

3              THE COURT:  Has he told about any defenses you might

4    have to these charges?

5              DEFENDANT DAY:  Yes.

6              THE COURT:  Has he explained the nature of the

7    charges?

8              DEFENDANT DAY:  Yes.

9              THE COURT:  Has he explained how the sentencing process

10   works in general?

11             DEFENDANT DAY:  Yes.

12             THE COURT:  Have you given him all the facts that

13   you're aware of that he would need to know to figure out what is

14   in your best interest?

15             DEFENDANT DAY:  Yes.

16             THE COURT:  Continuing with you for a moment, Mr. Day,

17   there is no plea agreement that I'm aware of.  But I want to

18   make sure you tell me whether anyone has made you any promises

19   or representations, guarantees or other statements about what

20   will happen to you at the time of sentencing.

21             DEFENDANT DAY:  No.

22             THE COURT:  Has anyone made any threats to you or to

23   any member of your family that prompts you to plead guilty this

24   afternoon?

25             DEFENDANT DAY:  No, sir.

1        THE COURT: Has anyone made you any promises of

2    leniency?

3        DEFENDANT DAY: No, sir.

4        THE COURT: No one has told you what specific sentence

5    the court will impose; is that correct?

6        DEFENDANT DAY: That's correct, sir.

7        THE COURT: Are you presently on parole?

8        DEFENDANT DAY: No. I'm on supervised release, sir.

9        THE COURT: From an earlier federal offense?

10        DEFENDANT DAY: Yes, sir.

11        THE COURT: Are you aware of the consequences for

12    pleading guilty today in terms of what happens on that other

13    previous federal case?

14        DEFENDANT DAY: I'm aware of the consequences, yes.

15        THE COURT: Mr. Bell, do you feel that you understand

16    everything that's taking place here this afternoon?

17        DEFENDANT BELL: Yes.

18        THE COURT: Do you know of any reason why I shouldn't

19    accept your guilty plea?

20        DEFENDANT BELL: No.

21        THE COURT: Do you understand then that all that's left

22    in your case if I do accept the plea is for sentence to be

23    imposed?

24        DEFENDANT BELL: Yes.

25        THE COURT: And is your decision to plead guilty this

1    afternoon to Counts 2 and 3 entirely free and voluntary?

2              DEFENDANT BELL:  Yes.

3              THE COURT:  Mr. Day, I'm going to ask you the same

4    questions.  Do you think you understand everything that's been

5    going on here today?

6              DEFENDANT DAY:  Yes.

7              THE COURT:  Do you know of any reason why I shouldn't

8    accept your guilty plea?

9              DEFENDANT DAY:  No.

10             THE COURT:  Then do you understand that all that will

11   be left in this case is for sentence to be imposed?

12             DEFENDANT DAY:  Yes.

13             THE COURT:  Is it still your desire to plead guilty

14   notwithstanding everything that I have tried to explain to you?

15             DEFENDANT DAY:  Yes.

16             THE COURT:  Mr. Newman, there are a few questions I

17   would like to address to you.  Through your representation of

18   Mr. Bell, has he been able to cooperate with you in a competent

19   fashion?

20             MR. NEWMAN:  Yes, Your Honor.

21             THE COURT:  Did you sign the plea agreement in his

22   presence?

23             MR. NEWMAN:  I did, Your Honor.

24             THE COURT:  Did you discuss it with him before he and

25   you signed it?

1    MR. NEWMAN: Yes, Your Honor.

2    THE COURT: Does this plea agreement that Mr. Bell

3  entered into represent the entire disposition of his case?

4    MR. NEWMAN: It does, Your Honor.

5    THE COURT: Did anyone make any promises,

6  representations or guarantees to you that prompted you to

7  recommend that Mr. Bell plead guilty?

8    MR. NEWMAN: No, Your Honor.

9    THE COURT: Are you satisfied that his constitutional

10  rights have been observed?

11    MR. NEWMAN: I am, Your Honor.

12    THE COURT: Is Mr. Bell pleading guilty because of any

13  illegally obtained evidence in the government's possession that

14  you're aware of?

15    MR. NEWMAN: No, Your Honor.

16    THE COURT: Based upon your analysis of the law and of

17  the facts, is it your conclusion that it's in Mr. Bell's

18  interest for him to plead guilty today?

19    MR. NEWMAN: It is, Your Honor.

20    THE COURT: Same questions to Mr. Mayock. I know

21  there's no plea agreement, but throughout your representation of

22  Mr. Day, has he been able to cooperate with you in a competent

23  way?

24    MR. MAYOCK: He has, Your Honor.

25    THE COURT: Have you discussed the facts of this case

35

1    in detail with him?

2         MR. MAYOCK:  I have.

3         THE COURT:  Are you satisfied that he has no

4    meritorious defenses?

5         MR. MAYOCK:  I am, Your Honor.

6         THE COURT:  Is he pleading guilty because of any

7    illegally obtained evidence in the possession of the government

8    that you're aware of?

9         MR. MAYOCK:  No, Your Honor.

10        THE COURT:  Do you think after your analysis of the law

11   and the facts that it's in his best interests to plead guilty?

12        MR. MAYOCK:  Yes, I do.

13        THE COURT:  Mr. Brown.

14        MR. BROWN:  Yes.  Your Honor, I would like to state the

15   obvious consequence of pleading guilty in this case as regards

16   supervised release that constitute a violation of their

17   supervised release.

18        THE COURT:  That applies only I think to Mr. Day.

19   Parole is the same basic consequence as to Bell.

20        MR. BROWN:  Thank you, Your Honor.  I'd also like to

21   point out that restitution is mandatory in this case.  To my

22   knowledge, currently all the currency from the bank was

23   recovered so I don't believe it will apply.  But in case I'm

24   incorrect on that or there was some other loss at the bank, I

25   did want the defendants to know they could be required to pay

36

1    restitution.

2              THE COURT:  You anticipated something I was going to

3    ask you about when I got to you.  Your turn will come in just a

4    minute.

5              MR. BROWN:  I apologize, Your Honor.

6              THE COURT:  That's all right.  Mr. Mayock, do you know

7    of any reason why I shouldn't accept Mr. Day's guilty plea?

8              MR. MAYOCK:  No, Your Honor.

9              THE COURT:  Mr. Brown, as to the plea agreement between

10   the government and Mr. Bell, other than what is expressly set

11   forth in that plea agreement, has the government made any other

12   promises or representations, guarantees to him or his counsel?

13             MR. BROWN:  No, Your Honor.

14             THE COURT:  Has the government obtained a written

15   statement from either defendant?

16             MR. BROWN:  No, Your Honor.

17             THE COURT:  Other than what was seized at the time of

18   the arrest, has the government obtained any other evidence

19   directly from the defendants?

20             MR. BROWN:  No, Your Honor.

21             THE COURT:  Can you think of any reason why I shouldn't

22   accept the guilty pleas?

23             MR. BROWN:  No, Your Honor.

24             THE COURT:  That's true for both Mr. Bell and Mr. Day?

25             MR. BROWN:  Yes.

37

1       THE COURT:  Is there any additional inquiry you want me

2    to touch on, Mr. Brown?

3       MR. BROWN:  No, Your Honor.

4       THE COURT:  How about you, Mr. Mayock?

5       MR. MAYOCK:  No, Your Honor.

6       THE COURT:  All right.  I'm going to do certain things

7    and here's what they are.  As to each of Mr. Bell and Mr. Day, I

8    find that there's a factual basis for the entry of each of the

9    guilty pleas, in the case of Mr. Bell to Counts 2 and 3;

10   Mr. Day, Counts 1, 2 and 3.  I find that each of them is alert,

11   seem to be able, intelligent, responsive, good demeanor.

12       I think each of them knows what he's doing and why.

13   Each of them understands the consequences.  There seems to be no

14   basis to believe for either of them that there is any extrinsic

15   factor such as threats or physical condition or mental condition

16   or use of prescriptive drugs or other drugs that might interfere

17   with their ability to make a free and voluntary decision.

18       I think they're making a free and voluntary decision.

19   I find there's been no promises made by anyone and no other

20   instances of inducements or coercion that place in question the

21   voluntariness of the decision that each of them is making this

22   afternoon.

23       For all those reasons I order that the guilty plea from

24   Mr. Bell be accepted and the guilty plea from Mr. Day be

25   accepted.  We're going to accept the guilty pleas to each of the

38

1    respective counts.  We're going to set a date for sentencing

2    and it won't be until September for a host of reasons.

3              What date do you recommend?

4              THE CLERK:  The 13th.

5              THE COURT:  September 13th which is a Monday.  Is that

6    available?

7              MR. MAYOCK:  It is, Your Honor.

8              THE COURT:  Mr. Newman?

9              MR. NEWMAN:  Yes, Your Honor.

10             THE COURT:  Mr. Brown?

11             MR. BROWN:  Yes, Your Honor.

12             THE COURT:  September 13th, 4:00, this court.  The

13   presentence report will be compiled by the probation office.

14   Subject to advice that each of you may get from your respective

15   lawyer, I order you to cooperate with the probation office and

16   to return here for sentencing.  Whatever the terms were of bail

17   and confinement that were previously imposed, those will remain

18   in effect.  I think the marshal representatives are here.  I

19   will remand you to the custody of the marshals.

20             Thank you, counsel.

21             MR. MAYOCK:  There is one thing Mr. Brown has to bring

22   to your attention at this time regarding the custodial

23   situation.

24             MR. BROWN:  Well, Your Honor, it's actually not for

25   Your Honor.  It's for the Metropolitan Detention Center.  I need

39

1    to write them a letter, status can be renotified.

2            THE COURT:  Mr. Brown --

3            MR. BROWN:  There's an order between the two defendants

4    and the Metropolitan Detention Center.  It's administrative,

5    Metropolitan Detention Center.  But it is true I'm going to

6    rescind that request today.

7            THE COURT:  Okay.  You may and now you're confirming it

8    on the record.

9            MR. BROWN:  I don't think it's actually an agreement,

10   Your Honor.  It's a representation that I'm going to do that.

11           THE COURT:  All right.  Does that take care of that?

12           MR. MAYOCK:  Yes, Your Honor.

13           THE COURT:  Anything else, counsel?

14           MR. MAYOCK:  No, Your Honor.

15           THE COURT:  Thank you.

16           (PROCEEDINGS ADJOURNED)

17

18
                          C E R T I F I C A T E
19           I HEREBY CERTIFY THAT THE FOREGOING IS A CORRECT
     TRANSCRIPT OF THE ABOVE-ENTITLED PROCEEDINGS, PAGES 1-39.
20   DATED JANUARY 6, 2000; LOS ANGELES, CALIFORNIA.

21

22   LYNNE SMITH
     OFFICIAL COURT REPORTER
23

24

25